## WHITCOMB *v.* GANDY.

*(Circuit Court, D. Nebraska. March 1, 1889.)*

JUDGMENT—VACATION—MISTAKE.

In an action on five notes, a parol agreement was made between counsel for the parties that the case should be passed until the attorney for plaintiff, who was sick, could attend to it. Afterwards the plaintiff employed another attorney, and after the case had been passed several times it was tried in the absence of defendant and his counsel, and judgment given for plaintiff. It appeared that neither the latter nor the attorney who tried the case knew of the agreement made by plaintiff's former counsel, and that, after the case had been passed once or twice, the plaintiff wrote to defendant's attorney that it would be pressed for trial at the then present term. *Held,* that on the payment by defendant of one of the notes, the validity of which was satisfactorily shown by the evidence, the judgment would be set aside.

In Equity. On bill for injunction.
*Reavis & Thomas,* for complainant.
*John L. Webster,* for defendant.

BREWER, J. This case is before me on bill, answer, and proofs. The testimony is voluminous, many score of witnesses having been sworn and examined. It is monumental in the amount of falsehood which is developed. It is impossible to avoid the conclusion that many witnesses have deliberately perjured themselves, and in such a case it is not easy to separate the truth from the falsehood, or to determine what are the real facts. These are beyond question, and they must furnish the basis of investigation: Prior to April, 1884, John Anderson and Nels Anderson formed the firm of Anderson Bros., residing at Humboldt, and engaged in the manufacture of wagons, buggies, etc. In April or May of that year, O. M. Whitcomb, the plaintiff, joined the firm, the name of which was changed to Anderson Bros. & Co. That firm was dissolved on September 29, 1884, plaintiff taking the property and assuming the debts. J. L. Gandy was a physician living at Humboldt, and as agent for his wife, M. E. Gandy, or acting for himself, had sundry business transactions with the firm of Anderson Bros. & Co. On the day of the dissolution of the firm,—September 29th,—John Anderson executed to

M. E. Gandy in the firm name a note for $575. It is claimed that on the same day he executed four other notes, also in the firm name,. to the same party,—three for a thousand each and the fourth for $744.75. These notes were all indorsed to defendant, W. S. Gandy, a brother of J. L. Gandy, and a resident of Indiana. Suit was commenced on these notes in the state court, and removed by the plaintiff to this court. The case was for trial at the November term, 1886. The only attorney of record for the plaintiff was August Schoenheit, who resided at Falls City, near Humboldt; while E. W Thomas, E. A. Tucker, and Isham Reavis, who also resided at Falls City, were the attorneys of defendant. Whitcomb, who alone was served with process and answered. Mr. Schoenheit was sick during the fall and winter, unable to attend court, and finally died in February, 1887. Mr. Reavis made a parol agreement with Mr. Schoenheit that the case should be passed until such a time as Mr. Schoenheit's health would permit him to go to Omaha to try the case. This was before the commencement of the term. The fact of this agreement he communicated to his co-counsel and client; and when the case was called by Judge DUNDY for trial at the opening of the term, he announced the fact of such agreement. No memorandum was made of it, and no order entered by the court. Mr. Schoenheit's health not improving, J. L. Gandy, acting for his brother, came to Omaha, and employed J. L. Webster to look after the case. Several times the case was called for trial and passed, but finally, on the 29th of December, in the absence of defendant and his counsel, trial was had, and judgment rendered for the full amount of the five notes and interest. Mr. Reavis, one of the counsel for defendant, was informed of this judgment on the 2d or 3d day of January following; and within two or three weeks at least, the defendant and his other counsel were also advised of the fact. The term at Lincoln commenced the first Monday of January. Nothing was done at that term, and this bill was filed on June 17, 1887, to restrain the enforcement of that judgment on the ground that it was fraudulently obtained. Answer to this bill having been duly filed, testimony was taken, and the case is now before me for consideration. Mr. Schoenheit is dead, so that we do not have his version of the arrangement between counsel; but there is no reason to doubt, in view of Mr. Reavis' high character, the substantial accuracy of his recollection, or that there was some general understanding between him and Mr. Schoenheit that the case should be passed to await Mr. Schoenheit's restoration to health. It does not appear, however, that J. L. Gandy, who managed his brother's case, knew of any such arrangement, or that Mr. Webster, the counsel subsequently employed, was informed of it; so that they acted in the utmost good faith in pressing the case for trial at the time they did. More than that, it appears clearly that, after the case had been called and passed once or twice, J. L. Gandy, in Mr. Webster's office, wrote a letter to one of the counsel for defendant, notifying him that the case would be pressed for trial at that term. This letter was mailed in ample time to have reached counsel so as to enable him to attend the trial. Further than that, before coming to Omaha, he mailed a postal to the

same counsel, giving like notice. Execution was issued on this judgment, a levy made on some property of defendant, and the marshal went down to make the sale. Defendant gathered a crowd of his friends, and by threats and intimidations prevented the sale, and compelled J. L. Gandy to sign a stipulation for arbitration. I think the foregoing facts are either undisputed, or so clearly established that there is practically no doubt as to them. Among the disputed facts are: whether the four notes were signed by John Anderson; whether any consideration was received for said notes if signed by him; whether the notes were transferred in good faith to plaintiff before maturity; whether defendant and some of his counsel did not know of the judgment in time to file a motion for a new trial at the the term at which it was rendered; whether the defendant did not admit the correctness of the indebtedness, and the propriety of the judgment, under the belief that his property was concealed from execution, and first complained thereof when the marshal had found some property upon which to levy. It would be a waste of time to attempt to review the testimony of the various witnesses, or to attempt to determine what is the truth as to these disputed matters. It is conceded that the note of $575 was signed by John Anderson in the firm name, and notwithstanding John Anderson's denial I think it is satisfactorily shown that there was consideration for it, and such consideration as would made the note valid, in the hands of a *bona fide* holder at least, and probably in the hands of the original payee. While I have no doubt that there was, as stated by Mr. Reavis, some such understanding or parol agreement between himself and Mr. Schoenheit, the case furnishes only another of the many illustrations of the danger, at least, of relying upon mere parol agreement between counsel. Many courts insist on a rule that all agreements between them shall be in writing, and that no parol stipulation will be recognized. If a stipulation had been signed and filed with the clerk, or if an order had been made by the court, all this trouble would have been avoided; and when a party risks his interests upon such parol stipulations, he has no one but himself to blame if trouble and expense be the result. There is no reason to doubt that Mr. Webster acted in the utmost good faith, for he passed the case from day to day to enable the defendant to be present with his counsel, and took even the unnecessary pains to send formal notice to him by letter. Nor is there any testimony which shows that Mr. Gandy was not also acting in good faith. So that it would be unjust and inequitable to cast upon him the burden and expense of a blunder which he did not make. At the same time a court of equity ought, so far as it can, to relieve a party from the consequences of such a blunder. I think, therefore, that which under the circumstances is equitable is this: that the present complainant (the defendant in the law action) should have the privilege of making a defense to the four notes, and that can be done only by sustaining the bill. The order will be that, upon the payment by complainant of the note of $575 and interest, and the costs of this suit, the judgment in the law action will be set aside and held for naught, and the case set for trial upon the issues as to the

four notes; the security already given for the payment of the judgment to remain until the determination of the suit. The failure to file a replication is a merely technical omission, which the court would never permit to interfere with a decision according to the equities of the case as developed in the testimony.